C.S.,

    Plaintiff,

  vs.

WYNDHAM HOTELS & RESORTS, INC.;
LA QUINTA HOLDINGS INC.;
LA QUINTA PROPERTIES, INC.;
COREPOINT LODGING, INC.; CPLG LLC;
LQ FL PROPERTIES LLC, name change CPLG
FL PROPERTIES LLC,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

## **COMPLAINT**

Plaintiff C.S., by and through her undersigned attorneys, hereby files this Complaint[1] against WYNDHAM HOTELS & RESORTS, INC. ("Wyndham Hotels"), LA QUINTA HOLDINGS INC ("La Quinta Holdings"), LA QUINTA PROPERTIES, INC. ("La Quinta Properties"), COREPOINT LODGING, INC. ("CorePoint"), CPLG LLC ("CPLG")  and LQ FL PROPERTIES LLC, name change CPLG FL PROPERTIES LLC ("CPLG FL") (collectively "La Quinta Defendants"), and alleges as follows:

## **INTRODUCTION**

1. This action for damages is brought by the Plaintiff, C.S., a survivor of sex trafficking, under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA"),  as well as other Florida state laws as identified herein.

---

[1] This Complaint is being filed based upon the Order of the Honorable Judge John E. Steele entered on August 5, 2020 in the matter of *C.S., et al v. Naples Hotel Company, et al*, 2:20-cv-00118-JES-MRM, pp. 13-14, 17.

2. The La Quinta Defendants are hotel owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels at which sex trafficking has taken place, including the La Quinta Inn & Suites by Wyndham Naples "La Quinta Hotel" where Plaintiff C.S. was trafficked, and at all material times, each and every La Quinta Defendant was doing business as the La Quinta Hotel.

3. Human sex trafficking is prevalent at hotels and motels throughout the United States and globally due to many factors, including but not limited to, ease of access for buyers, the ability to pay in cash (non-traceability), the ability to maintain anonymity, privacy and discretion.

4. At all material times, each and every La Quinta Defendant had knowledge of the prevalence of sexual trafficking at hotels and motels throughout the United States and globally, including the factors identified in the preceding paragraphs, yet each and every La Quinta Defendant failed to prevent and/or take steps to prevent this horrific criminal conduct from occurring at their hotels, including the La Quinta Hotel, so that each and every one of them could continue earning a profit at the expense of human life, human rights, and human dignity.

5. As part of their knowledge of sex trafficking, each and every La Quinta Defendant knew or should have known that sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will at these hotels and motels.

6. Plaintiff C.S.'s sex traffickers, or 'pimps', chose the La Quinta Hotel as a venue to conduct their sex trafficking activities.

7. The passage of the TVPRA in 2008 (hereinafter "TVPRA"), as well as countless other legislative initiatives, put the La Quinta Defendants on notice of the high likelihood of these illegal acts occurring on their hotel premises, including the premises of the La Quinta Hotel, which, at a

minimum, warranted them to be all the more vigilant and proactive in preventing this conduct.

8. Each and every La Quinta Defendant, who were the owners, operators, managers, controllers, franchisees and/or franchisors of the La Quinta Hotel, knew or should have known, based on a combination of well-documented indicators, that sex trafficking and other criminal activity was occurring, and would continue to occur, at the La Quinta Hotel as a result of their respective misfeasance and nonfeasance.

9. At all material times, each and every La Quinta Defendant, individually and/or by their respective actual or apparent agents, operators, servants, franchisees and/or employees, aided, concealed, confined, benefitted and profited from sex trafficking and other criminal activity that was occurring at the La Quinta Hotel, including as to Plaintiff C.S.

10. At all material times, each and every La Quinta Defendant, individually and/or by their respective actual or apparent agents, operators, servants, franchisees and/or employees, harbored human traffickers at the La Quinta Hotel and/or failed to rectify the foreseeable risks of sex trafficking and other criminal activity that were occurring and would continue to occur at the La Quinta Hotel.

11. At all material times, each and every La Quinta Defendant, individually and/or by their respective actual or apparent agents, operators, servants, franchisees and/or employees, failed to take steps to prevent dangerous conditions from existing at the La Quinta Hotel, failed to ensure the La Quinta Hotel was safe and secure from criminal conduct and failed to report suspicious conduct, such as human sex trafficking, at the La Quinta Hotel.

12. As a result of each and every one of the La Quinta Defendant's failure to act and their negligent operations as outlined in the Complaint, each and every La Quinta Defendant allowed the La Quinta Hotel to be a vehicle for carrying out human trafficking, sex crimes and/or other

unlawful conduct.

13. While each and every La Quinta Defendant profited from the room occupancy at the La Quinta Hotel, which included rental fees, franchise royalty fees, increased property value, food and beverage sales on site and/or ATM fees, Plaintiff C.S. was being exposed to continuous and repeated dangerous conditions at the La Quinta Hotel as a sex slave that resulted in her confinement, bodily injuries, emotional distress, mental harm and anguish from approximately 2015 and continuing through approximately February of 2016.

14. Before and during this period from 2015 to 2016, each and every La Quinta Defendant was on notice of the prevalence of sex trafficking at the La Quinta Hotel as well as at similarly situated hotels within Naples, Florida, and each and every La Quinta Defendant failed to take adequate steps that would have prevented its occurrence.

15. Before and during this period from 2015 to 2016, each and every La Quinta Defendant failed to implement sufficient educational and training programs on sex trafficking within their respective corporate chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the La Quinta Hotel.

16. Before and during this period from 2015 to 2016, each and every La Quinta Defendant knew or should have known that Plaintiff C.S. was being trafficked at the La Quinta Hotel and each and every La Quinta Defendant failed to act upon the obvious signs alerting them to the crimes taking place at the La Quinta Hotel.

17. Plaintiff C.S. brings this action for damages against each and every La Quinta Defendant named herein. Each of the La Quinta Defendants, in violation of the TVPRA, knowingly benefited from a venture that they knew, or should have known, to be engaging in sex trafficking

in violation of 18 U.S.C. § 1591(a) and (b), and who enabled, harbored, facilitated or financially benefited, or any combination of the foregoing, from a sex trafficking venture in which Plaintiff C.S. was trafficked for sex, sexually exploited, and victimized in violation of the TVPRA.

18. As a direct and proximate result of each and every La Quinta Defendant's willful blindness, negligence, facilitation, misfeasance, nonfeasance and/or consistent refusals to prevent human trafficking at the La Quinta Hotel, the Plaintiff C.S. was drugged, starved, choked, beaten, sex trafficked, sexually exploited, physically abused, mentally abused, and victimized repeatedly at the La Quinta Hotel and other hotels, in violation of the aforementioned statutes as well as Florida state law.

19. This action is also for violation of Florida's RICO laws, premises liability, negligent hiring, supervision and retention as well as negligent rescue, aiding and abetting underlying wrongdoing.

## JURISDICTION AND VENUE

20. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States and this Court has supplemental jurisdiction over Plaintiff's claims that do not arise under federal law because each claim is "so related to claims in the action within [this Court's] original jurisdiction that they form part of the same controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought.

**PARTIES**

22. At all times material to this complaint, Plaintiff C.S. was a resident of Collier County, Florida.

23. Plaintiff C.S. is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

24. Plaintiff C.S. was sex trafficked at the La Quinta Hotel located at East at 185 Bedzel Cir. Naples, Florida 34104 between 2015 and 2016.

25. Defendant Wyndham Hotels is a Delaware corporation with its principal place of business located at 22 Sylvan Way, Parsippany, New Jersey 07054, is the "world's largest hotel franchising company" and claims to "mandate human trafficking training for all company employees" within each of its hotel brands' individual franchise properties, namely, the La Quinta Hotel.[2]

26. Defendant La Quinta Holdings is a Florida corporation with a principal place of business located at 205 Worth Avenue, #303, Palm Beach, Florida 33480.

27. Defendant La Quinta Properties, Inc. is a Texas corporation with a principal place of business located at 909 Hidden Ridge, Suite 600, Irving, Texas 75038.

28. Defendant CorePoint is a Maryland corporation, with a principal place of business located at 125 E. John Carpenter Freeway, Suite 1650, Irving, Texas 75062.

29. Defendant CPLG is a Texas limited liability company with a principal address of 125 E. John Carpenter Freeway, Suite 1650, Irving, Texas 75062.

30. Defendant CPLG FL is a Texas limited liability company with a principal address of 125 E. John Carpenter Freeway, Suite 1650, Irving, Texas 75062.

---

[2] https://corporate.wyndhamhotels.com/news-releases/wyndham-hotels-resorts-reinforces-efforts-to-combat-human-trafficking/; http://www.annualreports.com/HostedData/AnnualReports/PDF/NYSE_WH_2018.pdf.

31. At all times material to this complaint, Defendants Wyndham Hotels, La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL were collectively doing business as La Quinta Hotel in Naples, Florida, and, upon information and belief, were authorized to do, licensed to do, and were doing business in the State of Florida offering the La Quinta Hotel as a place of public lodging.

32. At all times material to this complaint, Defendants Wyndham Hotels, La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL were, by and through their agents, servants, franchisees and/or employees, the owners, operators, managers, supervisors, controllers and innkeepers of the hotel, namely the La Quinta Hotel located at East at 185 Bedzel Cir. Naples, Florida 34104.

<u>**SEX TRAFFICKING UNDER FEDERAL LAW**</u>

33. Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age." This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

34. Sex trafficking ventures are prohibited by federal criminal law. Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590. The crime of slavery can be divided into two elements: the act and the means. The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

35. Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22

U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

36.     Pursuant to 18 U.S.C. §1591(a) and (b), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion *or* from a person under the age of 18 years old are guilty of sex trafficking.  This includes, at a minimum, ___**both**___ the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work ***and*** the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

<u>**STATEMENT OF FACTS**</u>

**Defendants' Duty Of Care To Patrons**

37.     Chapter 509 of the Florida Statutes imposes legal responsibilities upon hotels, like those owned and operated by each and every La Quinta Defendant herein, to take action to protect people. In Florida, hotels are "innkeepers" and owe patrons a special duty of care.

38.     The La Quinta Hotel is a public lodging establishment pursuant to Chapter  509 of the Florida Statutes.

39.     Each and every named La Quinta Defendant owns, operates, manages, supervises, controls and/or is otherwise responsible for the La Quinta Hotel for the purpose of making a profit.

40.      The premises of the La Quinta Hotel includes a common space and private rooms as well as a parking lot that abuts to a sidewalk and/or land, and, at all material times, each and every La Quinta Defendant had possession, custody, or control of these common spaces, private rooms, parking lots and any sidewalk and/or land abutting thereto as it applies to their business of providing public lodging at the La Quinta Hotel.[3]

---

[3] If customers or clients are invited to use a convenient parking lot then the business owner may be liable for injuries they sustain on that lot even if it is not technically within the business' property line. *See Gutierrez v. Dade County School Bd.*, 604 So. 2d 852, 77 Ed. Law Rep. 1052 (Fla. 3d DCA 1992).

41. The La Quinta Hotel abuts to pathways, parking lots and/or driveways, and each and every La Quinta Defendant was or should have been aware that these neighboring parking lots, pathways and/or other driveways were being used by their patrons to traverse to and from the La Quinta Hotel, thereby expanding the zone where the La Quinta Defendants were to have prevented foreseeable risks of injury to the Plaintiff C.S.[4]

42. Aside from their special duty to patrons and guests at the La Quinta Hotel, such as Plaintiff C.S., at all material times, each and every La Quinta Defendant had one of the highest obligations to protect their guests from known or anticipated dangers, which includes sex trafficking and illegal enterprises.

43. At all relevant times, the La Quinta Defendants were aware of and/or should have been aware of their roles and responsibility in human sex trafficking.

**Franchisor-Franchisee Revenue**

44. Defendant Wyndham Hotels is a Hotel Brand that derives a large portion of its revenue from a franchised business model by lending its name and likeness to third party hotels, such as the La Quinta Hotel.

45. At the time of the incidents alleged herein, Defendant Wyndham Hotels owned, operated and controlled the Wyndham Hotels brand, including but not limited to, that which related to the La Quinta Hotel.

46. A typical hotel franchise business model is where the building and operations are run by a franchisee or third party management company under the hotel brand's control, although in some cases, the Hotel Brand may offer a modified franchise model where the Hotel Brand actually

---

[4] *Borda v. East Coast Entertainment, Inc.*, 950 So. 2d 488 (Fla. 4th DCA 2007).

manages the franchised hotel on behalf of third-party hotel owners.[5]  In return, the Hotel Brand receives a significant franchise fee and continuous royalties on the franchised property's gross revenue, and exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a franchise contract or membership agreement while still profiting from putting heads in beds.

47.     At all times material to this complaint, Defendant Wyndham Hotels received a significant franchise fee and continuous royalties on the La Quinta Hotel's gross revenue, and exchanged the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a franchise contract or membership agreement while still profiting from putting heads in beds.

48.     Upon information and belief, at all times material to this complaint, Defendant Wyndham Hotels retained significant control of the La Quinta Hotel – control which included, but was not limited to the areas of:

      a.  Employee training;

      b.  Standardized strict rules governing business operations;

      c.  Hotel marketing and branding;

      d.  Prices for hotel rooms and amenities;

      e.  Requirement for regular inspection;

      f.  Online booking platforms;

      g.  Rewards programs;

      h.  Employee compensation and benefits; and

      i.  Building and maintenance of hotel facilities.

49.     At all times material to this complaint, Defendant Wyndham Hotels gave its entire identity

---

[5] https://www.sec.gov/Archives/edgar/data/858446/000119312517066763/d286710d20f.htm

to La Quinta Hotel, including but not limited to, the signage on and in front of the building, staff uniforms and pens found on bedside tables, thus representing and assuring customers that if they checked into that hotel, they could expect standards consistent with the Wyndham Hotel Brand.

50. In further support of its brand recognition relating to the La Quinta Hotel, and at all times material to this complaint, Defendant Wyndham Hotels used marketing organizations, hotel listings in the Global Distribution System (GDS) and other online travel agency databases.

51. At all times material to this complaint, Defendant Wyndham Hotels also provided the La Quinta Hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs and a website in order to ensure that booking and room reservations (i.e. the source of profits for Defendant Wyndham Hotels) were controlled by the Hotel Brand.

52. Upon information and belief, the La Quinta Hotel typically paid around 10% of its total room revenue back to Defendant Wyndham Hotels.

53. Upon information and belief, Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL, as franchisees of the La Quinta Hotel, were required to attend Defendant Wyndham Hotels' training programs and workshops prior to commencing operations, and every manager or director of the La Quinta Hotel was typically required to complete a certification course.

54. Upon information and belief, Defendant Wyndham Hotels would also provide consulting program and/or training visits and/or services to the La Quinta Hotel, both at the inception of the franchise and throughout the existence of the franchise agreement.

55. In 2011, Wyndham Hotels and Resorts Inc.'s predecessor entity, Wyndham Worldwide Corporation, Signed the Tourism Child-Protection Code of Conduct yet only trained some of its

employees to look for signs of trafficking.[6]

56.     Upon information and belief, Defendant Wyndham Hotels has the authority to enforce its standards through periodic audits, inspections, and termination of the franchise agreement if the La Quinta Hotel is found to be inadequate.

57.     It is the right and responsibility of Defendant Wyndham Hotels to enforce it brand standards as to all of it franchised hotels, including the La Quinta Hotel.

58.     While Defendant Wyndham Hotels has the right to kick delinquent hotels out of its system, it seldom does because it would be at the expense of termination its royalty payments; even an inadequate or dangerous hotel under the parent hotel brand's flag generates more revenue than no hotel.

**The La Quinta Defendants' Knowledge of The Prevalence of Sex Trafficking at Hotels and Their Participation in the Sex Trafficking Industry**

59.     Each and every La Quinta Defendant, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels, including the La Quinta Hotel, have long profited from the reputations of hotels, including the La Quinta Hotel, as havens of privacy and discretion for the offending, including the criminals that trafficked Plaintiff C.S.

60.     At all material times, each and every La Quinta Defendant, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels, including the La Quinta Hotel, knew or should have known that their hotels, including the La Quinta Hotel, offered anonymity and non-traceability, making them ideal venues for crime, drugs and sex

---

[6] End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004. The Code identifies the following six (6) steps companies can take to prevent child sex trafficking: (1) establish corporate policy and procedures against sexual exploitation of children; (2) train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases; (3) include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children; (4) provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases; (5) support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and (6) report annually on the company's implementation of Code-related activities.

trafficking in particular.

61.    At all  material times, each and every La Quinta Defendant, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels, including the La Quinta Hotel, knew or should have known that hotels are the top-reported venue where sex trafficking acts occur and that traffickers were using their hotels,  including the  La Quinta Hotel, as hubs for their sexual trafficking operations.

62.    At all  material times, each and every La Quinta Defendant, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels, including the La Quinta Hotel, knew or should have known that traffickers were harboring, raping and assaulting victims at their hotels, including the La Quinta Hotel, and were forcing them to engage in "in call" services, wherein buyers ("Johns") would come to the hotels solely to purchase sex from these victims, as well as "out  call" services, wherein the buyer would rent a hotel room and the trafficker would deliver the victim to the buyer's room to complete the sordid transaction.

63.     At all material times, each and every La Quinta Defendant, individually and/or by and through their actual or apparent agents, servants, franchisees and/or employees, witnessed manifestations of sex trafficking and commercial exploitation  taking place  at their hotels, including the La Quinta Hotel, through various indicators that traffickers and their victims exhibit during their stay at their hotels, including the La Quinta Hotel.

64.    At all material times, each and every La Quinta Defendant, was on notice of repeated incidences of sex trafficking occurring on their hotel premises, including the La Quinta Hotel, yet they failed to take the necessary actions to prevent sex trafficking from taking place.

65.    At all material times, each and every La Quinta Defendant knew or should have known that pimps and sex traffickers used their hotel, including the La Quinta Hotel, to facilitate the

trafficking of women for sex.

66.     Each and every La Quinta Defendant had the ability and the greatest reach to prevent, identify and thwart sexual exploitation at their hotels, including the La Quinta Hotel.

67.     Multiple statutes and initiatives starting in 1997, have informed, mandated, called for, and suggested hotel owners, operators, managers,  supervisors, controllers and/or staff, including the La Quinta Defendants, to implement effective safeguards to mitigate the risk that human trafficking will occur at or involve their premises and personnel.

68.     Prior to  the trafficking of Plaintiff C.S., voluminous data, step-by-step solutions and well-researched manuals published by anti-trafficking groups were available to each and every La Quinta Defendant, individually and/or through their actual  or  apparent  agents,  servants, franchisees, employees and/or staff in every position, to help them identify the signs of human sex trafficking and stop it.

69.     At all material times, each  and every La Quinta Defendants had a legally imposed duty to ensure that their hotel properties, including the La Quinta Hotel, had taken all appropriate measures to prevent sex trafficking, and/or to timely implement reasonable policies, training, education and security measures to prevent sex trafficking.

70.     At all material times, the agents and/or employees of each and every La Quinta Defendant were uniquely situated to identify and report suspicious activity on their hotel properties, including the La Quinta Hotel, because from check-in to check-out there were numerous indicators that the traffickers and the adults and children who were being victimized by sex trafficking exhibited during their stay at their hotels, including the La Quinta Hotel.

71.     Had each and every La Quinta Defendant properly trained their agents and/or employees and/or implemented an anti-human trafficking protocol throughout their hotels and/or provided

other reasonable security measures, they could have prevented the trafficking of persons on their hotel properties, including the La Quinta Hotel.

72. Signs of sex trafficking at a hotel, and signs which were occurring at each and every La Quinta Defendant's hotels, including the La Quinta Hotel, include, but are not limited to, the following: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, renting two rooms next door to each other, declining housekeeping service for several consecutive days, significant foot traffic in and out of rooms, men traveling with multiple unrelated women, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.

73. Each and every La Quinta Defendant, individually and by and through their actual or apparent agents, servants, franchisees, employees and/or staff, were aware of and/or should have been aware of a number of warning signs at their hotels, including the La Quinta Hotel, that indicated the presence of human trafficking, including but not limited to:

    a. persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    b. persons lacking freedom of movement or being constantly monitored;

    c. persons having no control over or possession of money or ID;

    d. persons dressing inappropriately for their age or having lower quality clothing compared to others in their party;

    e. persons requesting room or housekeeping services (additional towels, new linens, etc.), but denying hotel staff entry into the room;

    f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

    g. persons extending stay with few or no personal possessions in the room;

    h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion);

i. the same person reserving multiple rooms;

j. a room being rented hourly, less than a day, or for an atypical extended stay;

k. attempts of persons to sell items to or beg from patrons or staff;

l. cars in the parking lot regularly parked backward, so the license plates are not visible;

m. loitering and solicitation of male patrons;

n. individuals waiting at a table or bar and then being picked up by a male (trafficker or customer);

o. persons asking staff or patrons for food or money; and

p. persons taking cash or receipts left on tables.

74. Had each and every La Quinta Defendant educated and/or trained their actual or apparent agents, servants, franchisees, employees and/or staff regarding human trafficking and their warning signs, their actual or apparent agents, servants, franchisees, employees and/or staff would have more aware of human trafficking taking place at their hotels, including the La Quinta Hotel, and could have, at best, prevented it from happening or, at worst, been more willing to report it when it happened.

75. Each and every La Quinta Defendant could have and should have adopted policies and procedures related to human trafficking and made anti-human trafficking resources readily available to their actual or apparent agents, servants, franchisees, employees and/or staff, but they did not.

76. Each and every La Quinta Defendant could have and should have mandated that all of their actual or apparent agents, servants, franchisees, employees and/or staff complete anti-human trafficking training, but they did not.

77. Each and every La Quinta Defendant could have and should have encouraged all of their

actual or apparent agents, servants, franchisees, employees and/or staff to report suspected incidents of human trafficking when observed on their hotel properties, including the La Quinta Hotel, but they did not.

78. Each and every La Quinta Defendant could have and should have developed and maintained relationships with law enforcement regarding appropriate and timely responses to suspected incidents of human trafficking on their hotel properties, including the La Quinta Hotel, but they did not.

79. Each and every La Quinta Defendant could have and should have posted anti-human trafficking awareness and informational materials in common areas and guest rooms at their hotels, including the La Quinta Hotel, to help eliminate human trafficking, but they did not.

80. Each and every La Quinta Defendant could have and should have developed and maintained relationships with non-profit service providers in the field of appropriate human trafficking prevention training for hotel staff, but they did not.

81. Each and every La Quinta Defendant failed to take effective preventative measure at their hotels, including the La Quinta Hotel, in spite of the indicia of human trafficking and effective preventative measures being widely known and available to them; they simply elected not to engage in preventative policies and practices.

82. The motivation behind each and every La Quinta Defendant's ongoing willful blindness and ongoing failure to act is plain and simple – limitless corporate greed; each and every La Quinta Defendant ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

83. By repeatedly failing to heed the call or repeatedly failing to execute their own policies, each and every La Quinta Defendant facilitated the sexual trafficking crimes at their hotels,

including the La Quinta Hotel, content to direct their efforts solely to profit and the bottom line.

84. Had each and every La Quinta Defendant implemented anti-human trafficking measures at their hotels, including the La Quinta Hotel, this would have been in conflict with their revenue objective which was constant and full hotel occupancy.

85. Upon information and belief, each and every La Quinta Defendant, individually and/or through their agents, lobbied through local, state and federal government levels against anti-human trafficking policies.

86. Due to each and every La Quinta Defendant's failure to act, each and every La Quinta Defendant facilitated enabled sex traffickers to use their hotels for sex trafficking, including the La Quinta Hotel, and traffickers and "Johns" continue to capitalize on each and every La Quinta Defendant's failure to timely and effectively act.

87. Each and every La Quinta Defendant's failure to prevent and stop sex trafficking and sexual exploitation at their hotels, including the La Quinta Hotel, effectively makes them accountable to victims of sex trafficking, including the Plaintiff C.S.

**The Sex Trafficking of Plaintiff C.S. at the La Quinta Hotel**

88. From approximately 2014 through February 2016, Plaintiff C.S. was recruited to, enticed to, solicited to, held at, harbored as captive at and/or transported to various hotels in Naples, Florida by her sex traffickers to engage in commercial sex acts at hotels on a regular, consistent and/or repeated basis, from approximately 2015 to February 2016, Plaintiff C.S. was trafficked by Gregory Hines (aka Bowlegs), Keith Lewis and others at the La Quinta Hotel.

89. At all times material to this Complaint, each and every La Quinta Defendant, individually and/or by and through their actual or apparent agents, servants, franchisees and/or employees, regularly rented or otherwise provided, for their own benefit, rooms and services at the La Quinta Hotel to Plaintiff C.S.'s sex traffickers.

90. At all times material to this Complaint, each and every La Quinta Defendant received monetary payment for the rental of rooms at the La Quinta Defendant, including the rooms where Plaintiff C.S. was being trafficked.

91. The Plaintiff C.S. was forced to engage in sexual activities within and on the premises of the La Quinta Hotel that was at all relevant times owned, operated, managed, supervised, controlled and/or otherwise held responsible by each and every La Quinta Defendants.

92. Upon information and belief, each and every La Quinta Defendant's agents and employees made promises to the Plaintiff's sex traffickers to not interfere with the Plaintiff C.S. who was a victim of human sex trafficking and slavery.

93. The human sex trafficking enterprise, specifically as to how it was applied to Plaintiff C.S., was run out of the La Quinta Hotel as follows:

   a. Plaintiff's sex traffickers put up internet advertisements for the purpose of prostituting the Plaintiff. Said advertisements would include a phone number, which would ring to their cell telephone. During the telephone call, sex for cash was negotiated and the caller "John" would be informed that the Plaintiff was at one of the hotels identified in the Complaint.

   b. The caller "John" who negotiated for the Plaintiff's sex services would then appear on the hotel premises and either the Plaintiff would meet the "John" in the lobby to escort the "John" to the hotel room, or the "John" would speak to the staff at the hotels to inquire about the Plaintiff's room number or otherwise be directed to the Plaintiff's room.

   c. While the Plaintiff C.S. performed sex acts with the "John" in the room, the Plaintiff's sex traffickers would linger in the halls and on the premises of the hotel;

   d. The "John" paid the Plaintiff in cash in exchange for the commercial sex acts received in the hotel room. Plaintiff gave the cash received for the commercial sex acts to her trafficker.

   e. In turn, the Plaintiff C.S.'s sex traffickers, used said cash as payment for the hotel rooms where commercial sex acts continued to take place, thereby benefitting the occupancy rates and each and every La Quinta Defendant financially.

   f. The Plaintiff's sex traffickers also engaged in the commercial sale of illegal drugs on the hotel premises with sales taking place either in the hotel rooms or in public

19

areas of the hotels.

94. Plaintiff C.S. performed numerous commercial sex acts ("dates") per day while at the La Quinta Hotel between 2015 and 2016. As such, the routine identified in the preceding paragraph occurred on the hotel premises numerous times within a 24-hour window.

95. Upon information and belief, some of the "Johns" visiting the Plaintiff while on the premises of the La Quinta Hotel, were staff, agents and/or employees of the La Quinta Defendants.

96. While being trafficked at the La Quinta Hotel, Plaintiff C.S.'s room was frequented by many men on a daily basis and was always littered with drugs and drug paraphernalia.

97. While being trafficked at the La Quinta Hotel, Plaintiff C.S. and other sex trafficking victims were often observed by hotel staff wondering the halls in inappropriate attire.

98. Plaintiff C.S.'s sex traffickers, individually and through the Plaintiff and other agents, conducted multiple illegal drug sales throughout the day at the La Quinta Hotel in adjoining rooms.

99. Upon information and belief, while at the La Quinta Hotel, Plaintiff C.S. was forced to engage in frequent use of illegal hard drugs and would exhibit behavior consistent with someone who was under the influence, or near overdose, of a chemical substance.

100. The following was also routine conduct taking place at the La Quinta Hotel as a result of the human sex trafficking enterprise:

   a. Plaintiff's sex traffickers frequently rented rooms at the hotel close to each other and near the exit;

   b. Plaintiffs' sex traffickers often paid cash for the rooms at the La Quinta Hotel where the Plaintiff engaged in commercial sex acts;

   c. Plaintiff's sex traffickers booked extended stays at the La Quinta Hotel for themselves and for the Plaintiff on a routine basis and on a rotating basis frequently throughout the year;

d. Plaintiff and her sex traffickers would have few or no luggage or personal possessions for these extended stays;

e. Plaintiff was confined in the rooms at the La Quinta Hotel for long periods of time;

f. Plaintiff's rooms and her sex traffickers' rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiff was engaged in sex trafficking acts;

g. Men ("Johns") frequently entered and left the rooms at the La Quinta Hotel where the Plaintiff was engaged in illegal sex trafficking acts at all times of day and night;

h. The staff and customers at the La Quinta Hotel that was owned, operated, managed, supervised, controlled and/or otherwise held responsible by each and every La Quinta Defendant saw that the rooms where the Plaintiff engaged in commercial sex acts were messy, and contained sex and drug paraphernalia, blood-stained linens and had an unclean smell;

i. The rooms at the La Quinta Hotel were filled with evidence of sex trafficking and drug use;

j. Plaintiff's sex traffickers consistently refused housekeeping services and otherwise would prohibit staff from entering their rooms and the Plaintiff's rooms;

k. Plaintiff and other sex trafficking victims would frequently request clean towels and linens;

l. Plaintiff dressed in a sexually explicit manner and would walk seen by the hotel staff in the hallways of the La Quinta Defendant;

m. Excessively loud noises would consistently come from Plaintiff's rooms;

n. During nighttime hours, Plaintiff and her "Johns" would create noise at the La Quinta Hotel and, upon information and belief, would be a disturbance to other guests using the hotel for their intended purposes; and

o. While at the hotel, the Plaintiff displayed clear signs of physical abuse, diminished personal hygiene, submissiveness and inappropriate attire.

101. In addition, each and every La Quinta Defendant knew or should have known that:

a. Women, including Plaintiff, were walking around the La Quinta Hotel with cuts, lacerations, abrasions, bruises, injuries and bandages, including all over

their faces;

b. Women, including Plaintiff, were walking around the La Quinta Hotel strung out on drugs for days at a time;

c. Women, including Plaintiff were walking around the La Quinta Hotel in the same dirty clothes for prolonged periods of time;

d. Women, including Plaintiff, at the La Quinta Hotel looked tired and haggard due to forced sex work at all hours of the day for many days at a time;

e. Women, including Plaintiff, at the La Quinta Hotel were dressing inappropriately for the location and weather;

f. The same women including Plaintiff, were walking in the lobby of the La Quinta Hotel 9-10 times a day with different men (would meet "Johns" at front door); and

g. The Collier County Sheriff Office ("CCSO") would come to the hotel, knock on doors and tell girls and men to leave, and follow them to the next hotel.

102. Each and every La Quinta Defendant knew or should have known of the dangerous conditions on their respective premises that were likely to cause harm to the Plaintiff, in the following ways:

a. The La Quinta Hotel was not properly designed for guest safety and proper monitoring by staff and surveillance systems;

b. The presence of suspicious people;

c. Random people coming in and out of certain room each night to have sex and buy drugs;

d. Rooms at the La Quinta Hotel were routinely filled with about 10 people who engaged in sex and drugs;

e. Loud, boisterous sounds and music in the rooms and public areas throughout the night and day disturbed the quiet enjoyment of other guests;

f. Women and clients would go into hotel parking lot and loiter;

g. La Quinta hotel management was often notified by other hotel guests of the suspicious activating that was occurring on the hotel premises; and

h. Each and every La Quinta Defendant knew or should have known there was a

22

foreseeable increased risk that illegal sex trafficking was occurring as the La Quinta Hotel, and that the Plaintiff might be harmed. Further that the scope of the anticipated risk to which each and every La Quinta Defendant allowed the Plaintiff to be exposed and the Plaintiff was within the zone of risks that were reasonably foreseeable by the Defendants.

103. The foregoing routine and conduct occurred while Plaintiff C.S. was being sex trafficked at the La Quinta Hotel from 2015 through early 2016 and, upon information and belief, the foregoing routine and conduct, as it applies to sex trafficking not specific to Plaintiff, also occurred many years prior to 2015.

104. La Quinta Hotel guests often complained to hotel management that suspicious activating was occurring on the hotel property and suspicious individuals were continuously entering and exiting the hotel premises.

105. Naples Police were cognizant of the foregoing routine and conduct from afar, making it impossible for each and every La Quinta Defendant to be ignorant of what was occurring right in front of them.

106. In fact, as early as the Fall of 2015, the Collier County Sherriff's Office ("CCSO") had established routine patrols to check local hotels (including the La Quinta Hotel) for human sex trafficking activities.

107. La Quinta Hotel staff routinely observed law enforcement officers on the premises of the hotel premises due to the sex trafficking activity that was occurring.

108. Each and every La Quinta Defendant, individually and/ or by their actual or apparent agents, servants, franchisees and/or employees, knew or had constructive knowledge, that they were renting or otherwise providing rooms and services to individuals, such as human sex traffickers, who were engaged in the commercial sex trade.

109. Each and every La Quinta Defendant, individually and/or by their actual or apparent agents, servants, franchisees and/or employees, knew or had constructive knowledge, that the

women with Plaintiff's sex traffickers, including Plaintiff C.S., were used to carry out the commercial sex trade and sale of illegal drugs.

110. Each and every La Quinta Defendant, individually and/or by their actual or apparent agents, servants, franchisees and/or employees, knew or should have known of suspicious activity occurring at the La Quinta Hotel and that by failing to inspect and make their hotel premises safe from criminal activity, it was foreseeable that illegal activity was, and would continue to be, carried out on their respective hotel premise.

111. It follows then that each and every La Quinta Defendant could reasonably foresee that sex crimes, human trafficking or other foreseeable acts were occurring on their premises and/or were being committed against hotel guests, such as the Plaintiff C.S.

112. Additionally, each and every La Quinta Defendant, individually and/or by their actual or apparent agents, servants, franchisees and/or employees, knew or had constructive knowledge that the sale and usage of illegal drugs were being performed on the premises.

113. Moreover, each and every La Quinta Defendant's hotel housekeeping, front desk, maintenance, food preparation staff, managers, and other staff saw and/or had conversations with the Plaintiff C.S., and had knowledge, or should have had knowledge, that the Plaintiff was staying at the hotel for an extended period of time to carry out various sex trafficking ventures.

114. La Quinta Hotel staff routinely saw Plaintiff C.S. and other sex trafficking victims walking around the hotel premises at odd hours and in inappropriate attire.

115. At all material times, each and every La Quinta Defendant, individually and/or by and through their actual or apparent agents, servants, franchisees and/or employees, was uniquely positioned to observe the manifestations or indications of human sex trafficking and human sex trafficking victims within the La Quinta Hotel.

116. Had the La Quinta Hotel staff been properly trained by the La Quinta Defendants and/or anyone acting on their behalf regarding the obvious signs of sex trafficking, they would have observed the obvious signs of sex trafficking at the La Quinta Hotel, including as they applied to Plaintiff C.S., and these signs would have been recognized and, therefore, reported.

117. Upon information and belief, at the time of the incidents alleged herein, Defendant Wyndham Hotels was in an agency relationship with Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL.

118. At all times material to this action, Defendant Wyndham Hotels exercised ongoing and systematic control over operations at the La Quinta Hotel sufficient to establish an agency relationship with Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL.

119. At all times material to this action, Defendant Wyndham Hotels exercised control over the means and methods of how Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL conducted business at the La Quinta Hotel through one or more of the following actions:

    a. Hosting online bookings on Wyndham Hotels' domain;

    b. Requiring the La Quinta Hotel to use Wyndham Hotels' customer rewards program;

    c. Setting employee wages;

    d. Making employment decisions;

    e. Advertising for employment;

    f. Sharing profits;

    g. Requiring standardized training methods for employees;

    h. Building and maintaining the facility in a manner specified by the owner;

i. Requiring standardized or strict rules of operation;

j. Regularly inspecting the facility and operation by owner;

k. Fixing prices; and/or

l. Acting in other manners that deprived Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL of independence in business operations.

120. An apparent agency relationship also existed between Defendant Wyndham Hotels and Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL. Defendant Wyndham Hotels represented to the public that Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL had authority to act on behalf of Wyndham Hotels branded hotels.

121. Defendant Wyndham Hotels failed to address and prevent human trafficking at its Wyndham Hotels branded hotels, specifically the La Quinta Hotel, in the following ways:

a. Failing to adequately distribute information to assist employees in identifying human trafficking;

b. Failing to provide a process for escalating human trafficking concerns within the organization;

c. Failing to mandate managers, employees, or owners attend training related to human trafficking;

d. Failing to provide new hire orientation on human rights and corporate responsibility;

e. Failing to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

f. Failing to develop and hold or require ongoing training sessions on human trafficking; and/or

g. Failing to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

122. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL are alter egos, representatives, agents, or coconspirators of Defendant Wyndham Hotels, and Defendant Wyndham Hotels exercised or had the right to exercise control over business operations, management, supervision, administration, and procedures of the Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL.

123. The La Quinta Defendants are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the La Quinta Hotel where the Plaintiff C.S. was trafficked for sex. The La Quinta Defendants each share the common policies and practices complained of herein.

124. The La Quinta Defendants jointly employ or ratify the employment of individuals through horizontal joint employment and/or vertical joint employment.

125. As an integrated enterprise and or joint employer, the La Quinta Defendants are separately and jointly responsible for compliance with all applicable laws.

126. As an integrated enterprise and or joint employer, the La Quinta Defendants are jointly and severally liable for any damages caused by their employees.

127. The La Quinta Defendants failed to implement and enforce any of their own policy or policies and protect Plaintiff C.S.. from being sex trafficked.

128. The La Quinta Defendants knew or should have known that the La Quinta Hotel where Plaintiff C.S. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the La Quinta Hotel premises, including when Plaintiff C.S. was trafficked.

129. Despite having clear evidence of the extensive prostitution and sex trafficking that occurs at the La Quinta Hotel, the La Quinta Defendants repeatedly failed to stop these actions.

130. The La Quinta Defendants could have prevented sex trafficking, by: (i) distributing information to assist their agents, employees, operators, and brand managers in identifying human trafficking and indications of an illegal enterprise or suspicious activity; (ii) posting notices on what is human trafficking and a national hotline; (iii) providing a process for reporting and escalating human trafficking concerns within the organization, and to appropriate outside agencies; (iv) requiring all employees to attend training related to handling a situation involving human trafficking; (v) providing new hire orientation on human rights, corporate responsibility and whistleblowing of enablers; (vi) providing training and education to their hotels through webinars, seminars, conferences, and online portals on how to respond to suspected human traffickers, victims and suspicious activity; (vii) developing and holding ongoing training sessions on human trafficking; or providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention; (viii) providing steps they can take to deter traffickers and decline forms of bribery;  and (ix) ensuring strict security protocols, credit cards only, and no loitering.

131. For years, the La Quinta Defendants have failed to take adequate steps to prevent the rampant culture of sex trafficking which tragically occurs on their properties, including the La Quinta Hotel at which Plaintiff C.S. was trafficked.

132. The acts and omissions of the La Quinta Defendants served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff C.S., and others, for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking.

### The La Quinta Defendants Knowingly Benefitted From Plaintiff C.S.'s  Sex Trafficking

133. At all material times, each and every La Quinta Defendant received money and

financially profited from the forced commercial sex acts that were being carried out by the Plaintiff C.S. on the premises of the La Quinta Hotel.

134. Each and every La Quinta Defendant knew or should have known that they were financially profiting from the continuation of illegal commercial sex acts committed on the premises of the La Quinta Hotel through both renting of rooms and provision of the Plaintiff's forced commercial sex services.

135. Despite knowledge, constructive knowledge and general awareness of the signs of human trafficking, each and every La Quinta Defendant, individually and/or by and through their actual or apparent agents, servants, franchisees and/or employees, failed to report to authorities, intervene, disrupt, refuse or otherwise stop the human sex trafficking of the Plaintiff C.S.

136. By harboring the Plaintiff C.S.'s sex traffickers and the Plaintiff's commercial sex and drug acts at the La Quinta Hotel, each and every La Quinta Defendant, individually and/or by and through their actual or apparent agents, servants, franchisees and/or employees, continued to financially profit from the room occupancy derived from not reporting and not refusing the human sex trafficking of the Plaintiff.

137. Accordingly, each and every Defendant continued to financially profit from the room occupancy derived from not protecting their hotel guests, to wit the Plaintiff C.S., from being a continuous victim of human sex trafficking.

**Defendants' Willful Blindness to Sex Trafficking at their Hotels**

138. Each and every La Quinta Defendant has been on constructive or actual notice[7] of repeated incidences of sex trafficking occurring at the La Quinta Hotel, yet each and every La Quinta

---

[7] By virtue of membership in AAOHO or ALHA, incidents on the premises, observations and evidence on the premises, incidents at nearby properties, news reports, industry reports, customer reviews or otherwise.

Defendant failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent sex trafficking at the La Quinta Hotel.

139. Plaintiff C.S. was a hotel guest at the La Quinta Hotel and Plaintiff was seriously and permanently injured as a direct result of each and every La Quinta Defendants' acts and omissions, in that each and every La Quinta Defendant permitted, harbored and facilitated illegal sex trafficking ventures to take place at the La Quinta Hotel whereby the Plaintiff C.S. was routinely and continuously abused, battered, falsely imprisoned, raped, beaten, starved, forcibly injected with drugs and enslaved.

140. More specifically, at all material times, in the quest for profits, the acts and omissions of each and every La Quinta Defendant regarding the La Quinta Hotel caused the Plaintiff to suffer:

    a. Forced labor;

    b. Forced confinement without safe means of escape;

    c. Assault and fear;

    d. Sickness, dizziness and headaches;

    e. Cuts, lacerations, abrasions and other physical harm;

    f. Mental anguish, humiliation, exploitation, degradation and mental distress;

    g. Suffocation, battery and rape;

    h. Shock, fright and post-traumatic stress;

    i. Overdose and drug-induced dangers (the Plaintiff suffered drug overdoses, drug-induced actions which caused harm to themselves, physical deformities and scarfing from actions of the "Johns" and drug usage); and

    j. Invasion of privacy and wrongful entry of "Johns."

**CAUSES OF ACTION**

141. The injuries and harms that Plaintiff C.S. suffered as a result of each and every La Quinta Defendant's negligent operation of the La Quinta Hotel and failure to make the hotel premises safe, are of a permanent and/or continuing nature.

142. Each and every La Quinta Defendant, as hotel owners, operators, supervisors and controllers, had a continuing legal duty to protect their hotel guests and other invitees, like the Plaintiff C.S., to use ordinary care to keep their hotel premises in a reasonably safe condition, and to protect their guests, such as the Plaintiff C.S., from harm due to reasonably foreseeable risks of injury, regardless if the guests were utilizing the hotels' common rooms, facilities, exterior passageways, or were within the confines of the rented rooms.[8]

143. Each and every La Quinta Defendant failed in their duties to the Plaintiff C.S. to provide security and other precautions to prevent the criminal acts upon her by third parties on a regular basis.

144. The attacks upon the Plaintiff C.S. by her traffickers, by the "Johns" and staff persons were foreseeable and thus arose a duty by each and every La Quinta Defendant to protect the Plaintiff.

145. Each and every La Quinta Defendant observed, knew or should have known there was a foreseeable increased risk that illegal sex and drug trafficking was occurring at the La Quinta Hotel and that the Plaintiff C.S. might be harmed during the rental of the rooms the La Quinta Hotel.

146. To each and every La Quinta Defendant, as hotel owners, operators, supervisors and controllers, the crime of human sex trafficking was a foreseeable risk because the long history,

---

[8] 17 Fla. Jur., Hotels, Restaurants, and Motels, § 24; 40 Am.Jur.2d, Hotels, Motels, and Restaurants, § 111.

31

prevalence and extent of this sex slavery was commonly known to them.

147. At all relevant times, each and every La Quinta Defendant, as hotel owners, operators, supervisors and controllers, were vehicles with which the crime of human sex trafficking was readily carried out, furthered, harbored and made financially viable.

148. Significantly, each and every La Quinta Defendant knew or should have known there was a foreseeable increased risk that illegal sex trafficking was occurring at their respective hotels, that tragic incidents were occurring as a result, and that the Plaintiff C.S., as a hotel guest, might be harmed due to prior similar incidents at their respective hotels.

149. Accordingly, each and every La Quinta Defendant should have taken steps to prevent sex and drug trafficking at the La Quinta Hotel in accordance with applicable Federal, State and local laws and guidelines

150. Accordingly, because human sex trafficking and other illegal activity associated therewith was foreseeable, each and every La Quinta Defendant had a duty to take adequate security or remedial measures to protect their guests from criminal activity, to wit, the Plaintiff C.S.

151. Plaintiff C.S.'s injuries and consequential damages were the direct and proximate result of the La Quinta Defendants' acts and omissions, namely:

    a. Failure to provide training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, or who work at the front desk;

    b. Failure to provide guidance on how to identify individuals who may be traffickers or their victims of the sex trafficking;

    c. Failure to establish, implement or enforce a protocol on reporting suspected human trafficking;

    d. Failure to establish, implement or enforce a protocol to respond to situations involving human trafficking;

    e. Failure to enforce provisions within employee manuals or handbook on how

to handle general emergency situations or manage criminal risks;

f. Failure to require their agents, servants, franchisees and/or employees to participate, complete and continue education regarding sex trafficking in hotels;

g. Failure to report and/or investigate complaints made by hotel guests regarding the illegal activity that was occurring on the hotel property;

h. Failure to remove and/or refuse subsequent accommodations to the Plaintiffs' sex traffickers when conduct displayed on the premises included a combination of intoxication, profanity, lewdness, or brawling; disturbing the peace or comfort of other guests; illegal activity; disorderly conduct; and drug dealing;

i. Allowing rental of hotel rooms without conferring with senior management notwithstanding the suspicions;

j. Failure to correct or remedy protocols that were defective or ineffective in preventing or handling prior sex and drug trafficking incidents at Defendant's hotel property;

k. Failure to provide adequate security personnel at the La Quinta Hotel to protect their guests;

l. Failure to establish, implement and enforce appropriate security policies and procedures for certain times of day, room locations, and suspicious activity;

m. Permitting unknown persons to loiter, to gain entry to guest hallways, to know room numbers, and have access to room keys;

n. Failure to check the background of the hotel employees for sex crimes and other unlawful acts; and

o. Otherwise failing to use reasonable care for the safety of their guests.

152. By failing to act, each and every La Quinta Defendant, by and through their actual or apparent agents, servants, franchisees and/or employees, allowed the Plaintiff C.S. to be harbored and confined for sexual acts while collecting rental fees thereon.

153. The La Quinta Defendant's willful blindness, negligence, or indifference for the health and welfare of the Plaintiff C.S. spanned over many months and exceeds all bounds of decency.

154.    Pursuant to Florida's statute 501.204, each and every La Quinta Defendant has engaged in unconscionable and unfair acts or practices in the conduct of the hospitality industry.

155.    As a further direct and proximate result of each and every La Quinta Defendant's conduct and lack of due and reasonable care, the Plaintiff C.S. had incurred expenses, fees, and costs of medical care and attention to her injuries, including: (1) physicians' fees; (2) medications and medical supplies; (3) hospitalizations; and (4) transportation costs to and from various physicians' offices and hospitals.

156.    As a further direct and proximate result of each and every La Quinta Defendants' conduct and lack of due and reasonable care, the Plaintiff C.S. has suffered great physical and mental pain, and will continue to suffer such pain for the indefinite future, for which the Plaintiff should also be compensated by each and every La Quinta Defendant.

**COUNT I**
**(Against All Defendants)**
**VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")**

157.    Plaintiff C.S. sets forth an action for violation of 18 U.S.C § 1595 as against each and every La Quinta Defendant named herein.

158.    In support of her action against Defendant Wyndham Hotels, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-25, 31-156 contained in this Complaint as if fully set forth herein.

159.    In support of her action against Defendant La Quinta Holdings Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 26, 31-156 contained in this Complaint as if fully set forth herein.

160.    In support of her action against Defendant La Quinta Properties, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 27, 31-156 contained in this Complaint as if fully set

forth herein.

161. In support of her action against Defendant CorePoint, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 28, 31-156 contained in this Complaint as if fully set forth herein.

162. In support of her action against Defendant CPLG, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 29, 31-156 contained in this Complaint as if fully set forth herein.

163. In support of her action against Defendant CPLG FL, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 30-156 contained in this Complaint as if fully set forth herein.

164. At to Plaintiff C.S.'s TVPRA action as against each and every La Quinta Defendant named herein, Plaintiff C.S. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and is therefore entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity who knowingly benefits, financially or by receiving anything of value from participation in a venture which that entity or person knew or should have known has engaged in violations of the TVPRA.

165. Each and every La Quinta Defendant named herein knowingly benefited from the sex trafficking of Plaintiff C.S. by receiving payment for the rooms rented for Plaintiff C.S. and her traffickers at the La Quinta Hotel. In addition, each and every La Quinta Defendant received other financial benefits in the form of food and beverage sales and ATM fees from those persons who were engaging in sex trafficking.

166. Each and every La Quinta Defendant knew or should have known about the nature of the sex trafficking venture at the La Quinta Hotel, including as they related to Plaintiff C.S., for the reasons stated above which include, but are not limited to:

     a. Requests by the traffickers to rent rooms near exit doors;

     b. Cash payments for the rooms by the sex traffickers;

c. Refusal of housekeeping services by those persons engaged in sex trafficking;

d. Excessive used condoms located in the rooms used for sex trafficking;

e. Excessive requests for towels and linens in the rooms used for sex trafficking;

f. Hotel staff observing Plaintiff C.S. and her traffickers in the hotel;

g. Plaintiff C.S. being escorted by traffickers in and around the hotel;

h. Operation of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession;

i. Multiple men per day coming and going from the same rooms without luggage or personal possessions;

j. Hotel staff observing Plaintiff C.S. in inappropriate clothing, often in the same dirty clothing for extended periods of time; and

k. Knowledge of police and EMS activity at the La Quinta Hotel and at other locations near the La Quinta Hotel that was related to commercial sex work.

167. Each and every La Quinta Defendant was participating in a venture under 18 U.S.C. § 1595(a) by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff C.S. for commercial sexual exploitation by repeatedly renting rooms at La Quinta Hotel to people each and every La Quinta Defendant knew or should have known were engaged in sex trafficking.

168. For the reasons set forth herein, Plaintiff C.S.. suffered and will continue to suffer substantial economic, physical, and psychological injuries as the result of being trafficked and sexually exploited at the La Quinta Hotel in violation of 18 U.S.C. §1591.

**COUNT II**
**(Against All Defendants)**
**Violation of Fla. Stat. § 772.104**

169. Plaintiff C.S.. brings this claim against each and every La Quinta Defendant under Fla. Stat. § 772.104(1) and § 772.104(2).

170. In support of her action against Defendant Wyndham Hotels, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-25, 31-156 contained in this Complaint as if fully set forth herein.

171. In support of her action against Defendant La Quinta Holdings Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 26, 31-156 contained in this Complaint as if fully set forth herein.

172. In support of her action against Defendant La Quinta Properties, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 27, 31-156 contained in this Complaint as if fully set forth herein.

173. In support of her action against Defendant CorePoint, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 28, 31-156 contained in this Complaint as if fully set forth herein.

174. In support of her action against Defendant CPLG, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 29, 31-156 contained in this Complaint as if fully set forth herein.

175. In support of her action against Defendant CPLG FL, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 30-156 contained in this Complaint as if fully set forth herein.

176. The La Quinta Defendants are associated with each other and/or the Plaintiff C.S.'s sex traffickers for the common purpose of profiting off an established sex trafficking scheme. This association-in-fact is therefore an enterprise within the meaning of Fla. Stat. § 772.102(3).

177. Each and every La Quinta Defendant conducted or participated in, or conspired to conduct or participate in, the affairs of their respective RICO Enterprises through a pattern of numerous acts of racketeering activity defined under Fla. Stat. § 772.102(1)(a)(15) and in violation of Fla. Stat. § 772.103, related by their common purpose to profit off an institutionalized sex trafficking scheme.

178. Specifically, each and every La Quinta Defendant conducted or participated in, and/or conspired to conduct or participate in, the affairs of their respective RICO Enterprises by knowingly, or with reckless disregard, maintaining sex trafficking as defined by Fla. Stat. § 787.06(2)(f).

179. As described in the preceding paragraphs, each and every La Quinta Defendant regarding their RICO Enterprises maintained sex trafficking by knowingly, or with reckless disregard, repeatedly allowing sex trafficking to occur on their premises between 2015 and 2016.

180. In exchange for maintaining the sex trafficking scheme, each and every La Quinta Defendant regarding their respective RICO Enterprises received a financial benefit in violation of Fla. Stat. § 787.06(3), namely, repeated payments for rooms used for sex trafficking.

181. These predicate acts of racketeering activity described above constitute a "pattern of racketeering activity" as defined in Fla. Stat. § 772.102(4) and furthered the common purpose of each and every La Quinta Defendant's respective RICO Enterprise to profit from a sex trafficking scheme.

182. Each and every La Quinta Defendant's acts have yielded consistent results and caused economic, physical, and psychological injuries to the Plaintiff C.S.

183. As set forth in the preceding paragraphs, the racketeering acts have similar participants.

184. Each and every La Quinta Defendant is a hospitality company that provides lodging at the La Quinta Hotel.

185. Each and every La Quinta Defendant regarding their respective RICO Enterprises directed their racketeering activities at a common victim, Plaintiff C.S.

186. The acts of each and every La Quinta Defendant have similar methods of commission, such as maintaining their deficiencies in implementing and enforcing policies and protocols regarding

sex trafficking at the La Quinta Hotel in order to maximize their profits.

187.    As a direct and proximate result of each and every La Quinta Defendant's acts discussed in this section, Plaintiff C.S. has suffered bodily injuries that are of a continuing or permanent nature, resulting in pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All of the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

**COUNT III**
**(Against All Defendants)**
**Premise Liability**

188.    Plaintiff C.S.. brings this claim against each and every La Quinta Defendant for premise liability.

189.    In support of her action against Defendant Wyndham Hotels, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-25, 31-156 contained in this Complaint as if fully set forth herein.

190.    In support of her action against Defendant La Quinta Holdings Plaintiff C.S. adopts and incorporates by reference paragraphs  1-24, 26, 31-156 contained in this Complaint as if fully set forth herein.

191.    In support of her action against Defendant La Quinta Properties, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 27, 31-156 contained in this Complaint as if fully set forth herein.

192.    In support of her action against Defendant CorePoint, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 28, 31-156  contained in this Complaint as if fully set forth herein.

193.    In support of her action against Defendant CPLG, Plaintiff C.S. adopts and incorporates by

reference paragraphs 1-24, 29, 31-156 contained in this Complaint as if fully set forth herein.

194. In support of her action against Defendant CPLG FL, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 30-156 contained in this Complaint as if fully set forth herein.

195. At all times material to this complaint, the Plaintiff C.S., while an invitee or otherwise lawfully present upon the premises of the La Quinta Hotel, did sustain injuries as a result of each and every La Quinta Defendant, their respective patrons and the criminal activity carried on at the La Quinta Hotel.

196. Each and every La Quinta Defendant, individually and by and through their agents, servants, franchisees and/or employees, owed a duty to maintain the premises of the La Quinta Hotel, that they owned, operated, controlled, supervised and/or for which they were otherwise responsible, in a reasonably safe condition and free from conditions that would render it dangerous and unsafe for the Plaintiff C.S.

197. Each and every La Quinta Defendant, individually and/or by and through their agents, servants, franchisees and/or employees, owed a duty to exercise reasonable care to protect the Plaintiff C.S., by inspection or other affirmative acts, from the danger of any reasonably foreseeable harm occurring from the reasonably foreseeable use of the premises of the La Quinta Hotel that they owned, operated, controlled, supervised and/or for which they were otherwise responsible by sex traffickers.

198. Each and every La Quinta Defendant, individually and/or by and through their agents, servants, franchisees and/or employees, owed a duty to exercise reasonable care to keep the hotel guests of the La Quinta Hotel, including Plaintiff C.S., safe by implementing and enforcing security measures and proper protocols.

199. Each and every La Quinta Defendant, individually and/or by and through their agents, servants, franchisees and/or employees, owed a duty to safeguard the Plaintiff C.S. against criminal

conduct that each and every La Quinta Defendant could reasonably foresee happening at the La Quinta Hotel.

200. Each and every La Quinta Defendant, individually and/or by and through their agents, servants, franchisees and/or employees, owed a duty to maintain the La Quinta Hotel in a hospitable, safe and reasonable manner, as well those areas beyond the hotel's property lines for which each and every La Quinta Defendant had possession, custody or control thereof.

201. Each and every La Quinta Defendant had actual or constructive knowledge of prior similar sex trafficking incidents carried out at hotel properties they owned, operated, supervised, controlled and/or were otherwise responsible, including the La Quinta Hotel, as well as other hotel properties in Naples, Florida.

202. Each and every La Quinta Defendant knew or should have known, in light of all the attendant circumstances stated herein, that the risk of such criminal conduct taking place at the La Quinta Hotel would be unreasonably high without each and every La Quinta Defendant taking appropriate security precautions against such conduct as well as protocols for reporting and refusing such conduct.

203. Each and every La Quinta Defendant, individually and/or by and through their agents, servants, franchisees and/or employees, had actual knowledge of the dangerous condition the Plaintiff C.S. was in at the La Quinta Hotel, or in the alternative, that the dangerous condition existed for a sufficient length of time at the La Quinta Hotel such that each and every La Quinta Defendant, in the exercise of ordinary care, should have known of the conditions, thereby giving each and every La Quinta Defendant constructive knowledge of the Plaintiff C.S.'s peril; and/or that the condition occurred with regularity at the La Quinta Hotel and was therefore foreseeable; and/or each and every La Quinta Defendant should have known of the dangerous condition or peril by conducting proper and reasonable inspection of the hotel premises and/or guests' conduct.

41

204. Because human sex trafficking and associated conduct was foreseeable, each and every La Quinta Defendant had a duty to take adequate measures at the La Quinta Hotel to protect their guests, including the Plaintiff C.S., from being victims of continued sex trafficking.

205. At all times material, each and every La Quinta Defendant, by and through their agents, servants, franchisees and/or employees, created and/or allowed the dangerous condition to exist at the La Quinta Hotel and/or failed to keep the Plaintiff C.S. safe while she was on the premises of the La Quinta Hotel.

206. Each and every La Quinta Defendant could have taken any number of corrective measures to make the dangerous conditions at the La Quinta Hotel cease, including but not limited to, not accepting payments, not allowing "Johns" to enter the La Quinta Hotel, not allowing sex traffickers to enter the La Quinta Hotel, providing training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, or who work at the front desk; providing guidance on how to identify individuals who may be traffickers or their victims of the sex trafficking; establishing, implementing or enforcing protocols on reporting suspected human trafficking and responding to situations involving human trafficking; and enforcing provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks.

207. In failing to take any measures to report and remove the dangerous condition from the premises of the La Quinta Hotel, each and every La Quinta Defendant failed to take reasonable care to protect the Plaintiff S.Y, their hotel guest.

208. Furthermore, by leaving their respective premises open and unattended, each and every La Quinta Defendant encouraged the use of the hotel premises by loiterers, pimps, criminals, rapists and drug dealers to run their own criminal venture, prostitute, batter, falsely imprison, overdose,

enslave, and gravely injure women, such as Plaintiff C.S., who – because of their fear, mental state, financial restraints and physical injuries from the forced sex occurring in the La Quinta Hotel rooms – were unable to rescue themselves. Accordingly, each and every La Quinta Defendant's failure to act effectively enabled their hotel room(s) to confine and/or imprison the Plaintiff C.S. without any safe means of escape from the "Johns" and/or "pimps".

209. Each and every La Quinta Defendant, by and through their agents, servants, franchisees and/or employees, breached their respective duties owed to the Plaintiff C.S., and were negligent regarding their respective hotels by:

    a. Creating a dangerous condition;

    b. Failing to correct the aforementioned dangerous condition;

    c. Failing to report and refuse renting to the traffickers;

    d. Failing to properly and adequately maintain the premises in a reasonably safe condition;

    e. Failing to monitor and prevent their staff and agents from conducting and engaging in illegal sex and drug trafficking;

    f. Failing to have security measures to protect the Plaintiff;

    g. Failing to provide training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, or who work at the front desk;

    h. Failing to provide guidance to employees on how to identify individuals who may be traffickers or their victims of the sex trafficking;

    i. Failing to establish, implement or enforce protocols on reporting suspected human trafficking and responding to situations involving human trafficking;

    j. Failing to enforce provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks; and

    k. Failing to take affirmative steps to investigate suspicious conduct and forbid criminal conduct.

210. As a direct and proximate result of the acts and omissions of each and every La Quinta

Defendant by and through their agents, servants, franchisees and/or employees – which led to the continuous dangerous condition at the La Quinta Hotel during the time period within which Plaintiff C.S. was trafficked there (approximately 2015 through approximately February 2016) – Plaintiff C.S. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All of the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

**COUNT IV**
**(Against All Defendants)**
**Negligent Hiring, Supervision and Retention**

211. Plaintiff C.S.. brings this claim against each and every La Quinta Defendant for negligent hiring, supervision and retention.

212. In support of her action against Defendant Wyndham Hotels, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-25, 31-156 contained in this Complaint as if fully set forth herein.

213. In support of her action against Defendant La Quinta Holdings Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 26, 31-156 contained in this Complaint as if fully set forth herein.

214. In support of her action against Defendant La Quinta Properties, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 27, 31-156 contained in this Complaint as if fully set forth herein.

215. In support of her action against Defendant CorePoint, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 28, 31-156 contained in this Complaint as if fully set forth herein.

216. In support of her action against Defendant CPLG, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 29, 31-156 contained in this Complaint as if fully set forth herein.

217. In support of her action against Defendant CPLG FL, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 30-156 contained in this Complaint as if fully set forth herein.

218. Each and every La Quinta Defendant, through their respective agents, employees, franchisees and/or servants, negligently authorized criminals to rent rooms for prostitution and drug dealing at the La Quinta Hotel, creating a foreseeable risk that the Plaintiff C.S. would be sold, used, abused, drugged, beaten and forced to engage in conduct for fear of her life.

219. Each and every La Quinta Defendant, through their respective agents, employees, franchisees and/or servants, failed to either identify and/or report the human sex trafficking and foreseeable harm of the Plaintiff.

220. Each and every La Quinta Defendant, through their respective agents, employees, franchisees and/or servants, failed to refuse continued lodging services to human sex traffickers.

221. Each and every La Quinta Defendant was in control of the hiring of agents, employees, and/or servants at the La Quinta Hotel that they owned, operated, supervised, controlled and/or or were otherwise responsible, and was responsible for performing background checks on these agents, employees and/or servants; instructing, training and supervising said agents, employees, and/or servants; and deciding whether to terminate said agents, employees and/or servants.

222. Each and every La Quinta Defendant had a duty to make an appropriate investigation of their agents, employees, and/or servants.

223. Each and every La Quinta Defendant was in control of the supervising of the agents, employees, and/or servants at the hotels that they owned, operated, supervised, controlled

and/or or were otherwise responsible, and was responsible for instructing, training and supervising said agents, employees, and/or servants.

224. Each and every La Quinta Defendant knew or should have known that their agents, employees, and/or servants were allowing criminals to rent rooms for prostitution and drug dealing.

225. Each and every La Quinta Defendant knew or should have known that their agents, employees, and/or servants were failing to either identify and/or report the human sex trafficking and foreseeable harm of the Plaintiff and others.

226. Each and every La Quinta Defendant knew or should have known that their agents, employees, and/or servants were failing to refuse continued lodging services to human sex traffickers.

227. At all material times, each and every La Quinta Defendant was negligent in their hiring, employment, supervision and termination decisions regarding their agents, employees, and/or servants, and said negligent decisions caused the Plaintiff C.S. to be injured.

228. It was foreseeable that each and every La Quinta Defendants' acts and omissions increased the risk that these illegal acts would regularly occur on the premises of the La Quinta Hotel and would cause harm to the Plaintiff C.S.

229. But for the negligence and omissions of each and every La Quinta Defendant as to the La Quinta Hotel, the criminal conduct, including human sex trafficking, on the foregoing dates could have been prevented and/or stopped.

230. Accordingly, each and every La Quinta Defendants is liable for all harmful results that are the normal incidents of, and within the increased risk caused by, their negligent acts and omissions regarding the La Quinta Hotel.

231. As a direct and proximate result of the acts and omissions of the Defendants, by and

through their agents, servants, franchisees and/or employees – which led to the continuous sex trafficking of Plaintiff C.S. from approximately 2015 through approximately February of 2016 – Plaintiff C.S. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future

**COUNT V**
**(Against La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL)**
**Negligent Rescue**

232. Plaintiff C.S. brings this claim against Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL for negligent rescue.

233. In support of her action against Defendant La Quinta Holdings Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 26, 31-156 contained in this Complaint as if fully set forth herein.

234. In support of her action against Defendant La Quinta Properties, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 27, 31-156 contained in this Complaint as if fully set forth herein.

235. In support of her action against Defendant CorePoint, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 28, 31-156 contained in this Complaint as if fully set forth herein.

236. In support of her action against Defendant CPLG, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 29, 31-156 contained in this Complaint as if fully set forth herein.

237. In support of her action against Defendant CPLG FL, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 30-156 contained in this Complaint as if fully set forth herein.

238. At all times material to this litigation, Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL were the owners and operators of the La Quinta Hotel and they ran a profit business of renting out rooms on their premises.

239. At all times material to this litigation, Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL knew or should have known that suspicious activity, illegal transactions, abuse, crimes, drugs and sex slavery were a regular occurrence at the La Quinta Hotel and were being conducted by a regular group of individuals.

240. At all times material to this litigation, Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL knew or should have known that this type of environment posed a danger at the La Quinta Hotel.

241. At all times material to this litigation, Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL had a duty to keep their hotel guests, including Plaintiff C.S., and their hotel premises safe and prevent foreseeable criminal activity.

242. At all times material to this litigation, Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL had a duty to take appropriate actions that would properly inform themselves and make the appropriate repairs to make the La Quinta Hotel safe, or otherwise frustrate criminal activity.

243. By failing to act and prevent suspicious behavior, Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL caused dangerous conditions to occur, exist and continue on their premises at all relevant times in this complaint.

244. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL knew or should have known that an illegal sex trafficking venture and drug conduct was occurring at the La Quinta Hotel but took no appropriate actions to properly investigate, report, cease or prevent the illegal conduct, nor to safeguard their hotel guests and/or to rescue

the Plaintiff C.S. from the peril they caused by renting rooms at the La Quinta Hotel for extended stays to human sex traffickers.

245. During all relevant times, Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL financially benefitted from the sexual trafficking rental money received from the La Quinta Hotel, where the Plaintiff C.S. was held as a sex slave, and the consistent occupancy. By failing to prevent or correct the dangerous conditions on the premises of the La Quinta Hotel, each and every La Quinta Defendants allowed the "Johns" continuing demand for the Plaintiff C.S.'s services to always be met.

246. As a result of the authorization, facilitation, access, financial benefits and concealment of the sex trafficking and drug use by Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL on the premises of the La Quinta Hotel, the Plaintiff C.S. was placed in peril.

247. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL had a duty to make safe a dangerous condition at the La Quinta Hotel and to rescue their hotel guests, specifically Plaintiff C.S., from the peril they created, as well as to protect and rescue their hotel guests, specifically Plaintiff C.S., from foreseeable criminal activity.

248. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL had a duty to act as reasonably prudent person under emergency circumstances to rescue the Plaintiff C.S. when they observed her on their hotel premises being sex trafficked, strung out, stumbling onto the adjacent highway, overdosed, injured and/or beaten.

249. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL failed to protect and failed to rescue the Plaintiff C.S. despite their legal duty to rescue her as a result of the hotel-guest relationship and because they placed the Plaintiff C.S. in the peril of continued

and extended forced sex services.

250. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL failed to act as reasonably prudent hotel owners and operators, especially in light of the prior incidents and known issues at their hotel and in the Naples community.

251. Plaintiff C.S. suffered physical, mental, emotional and economic damages as the result of the actions and inactions of Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL.

252. As a direct and proximate result of the acts and omissions of Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL, individually and/or by and through their agents, servants, franchisees and/or employees – which led to the continuous sex trafficking of Plaintiff C.S. on the premises of the La Quinta Hotel from approximately 2015 through approximately February of 2016 – Plaintiff C.S. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

**COUNT VI**
**(Against La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL)**
**Aiding and Abetting, Harboring, Confining, Coercion and Criminal Enterprise**

253. Plaintiff C.S. brings this claim against Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL for aiding and abetting unlawful activity including unlawful confinement, imprisonment, assault and battery by her sex traffickers and "Johns."

254. In support of her action against Defendant La Quinta Holdings Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 26, 31-156 contained in this Complaint as if fully set forth herein.

255. In support of her action against Defendant La Quinta Properties, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 27, 31-156 contained in this Complaint as if fully set forth herein.

256. In support of her action against Defendant CorePoint, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 28, 31-156 contained in this Complaint as if fully set forth herein.

257. In support of her action against Defendant CPLG, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 29, 31-156 contained in this Complaint as if fully set forth herein.

258. In support of her action against Defendant CPLG FL, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-24, 30-156 contained in this Complaint as if fully set forth herein.

259. The affirmative acts of Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL in renting hotel rooms at the La Quinta Hotel for extended amounts of time to the Plaintiff's sex traffickers for sex trafficking, and failing to report illegal conduct to the authorities caused the Plaintiff C.S. to be routinely confined to and imprisoned in the hotel rooms and their premises.

260. The affirmative acts of Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL in renting hotel rooms at the La Quinta Hotel for extended amounts of time to the Plaintiff's sex traffickers for sex trafficking, and failing to report illegal conduct to the authorities caused the Plaintiff C.S. to suffer assault and battery at the hands of her sex traffickers and "Johns."

261. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL desired Plaintiff's continuous occupancy of the hotel rooms at the La Quinta Hotel, and that of her sex traffickers and "Johns," because it generated revenue, even if said occupancy was related to suspicious or criminal activity.

262. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL

had knowledge, actual or constructive, that sexual trafficking victims, including the Plaintiff C.S., were being confined and imprisoned and that they had no reasonable means of escape due to physical barricades of the Plaintiff's sex traffickers in the hallways, forced drug use and/or physical restraints.

263. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL had actual and/or constructive knowledge the Plaintiff C.S. was being assaulted and battered at the hands of her sex traffickers and "Johns."

264. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL had knowledge, actual or constructive, that Plaintiff did not leave her rooms at the La Quinta Hotel for extended periods of times, nor allow maintenance to come into her hotel rooms.

265. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL rendered substantial assistance to Plaintiff's sex traffickers and "Johns" in carrying out her imprisonment, confinement, assaults and batteries at the La Quinta Hotel by allowing them to continuously use rooms there for sex trafficking, allowing "Johns" to find and visit the Plaintiff in her rooms at the La Quinta Hotel, and turning a blind eye to the unlawful conduct taking place so that they could obtain revenue from the renting of the rooms at the La Quinta Hotel.

266. The knowledge of Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL, along with their respective actions and inactions, allowed traffickers and "Johns" to make the Plaintiff C.S. their sex slaves.

267. Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL facilitated or assisted the criminal enterprise by either willful blindness, gross negligence, and/or indifference.

268. Accordingly, Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG

and CPLG FL are liable for all foreseeable damages that arose from the Plaintiff C.S.'s confinement, imprisonment, drug use, assault and battery that continually took place at the La Quinta Hotel.

269. As a direct and proximate result of the acts and omissions of Defendants La Quinta Holdings, La Quinta Properties, CorePoint, CPLG and CPLG FL, individually and/or by and through their respective agents, servants, franchisees and/or employees – which led to the sex trafficking of  Plaintiff C.S. at the La Quinta Hotel from approximately 2015 through approximately February of 2016 – Plaintiff C.S. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

270. Due to all of the above allegations against each and every La Quinta Defendant regarding Plaintiff's unlawful sex trafficking at their respective premises, Plaintiff pleads allowance to recover damages, court costs and reasonable attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff C.S. demands judgment against each and every Defendant as identified in each of the above-referenced claims and Counts and as follows:

1. Awarding compensatory damages to the Plaintiff for past and future damages for the described losses with respect to each count, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2. For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case will

be transferred for trial;

3.     Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish the Defendants and deter future similar conduct;

4.     Awarding the Plaintiff reasonable attorney's fees;

5.     Awarding the Plaintiff the costs of these proceedings; and

6.     Such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff C.S. hereby demands a trial by jury.

Dated: August 19, 2020

**s/ *Sharon M Hanlon***
Sharon M Hanlon, Esq
FL Bar Number: 946620
**Law Office of Sharon M. Hanlon, PA**
5633 Naples Boulevard
Naples, Florida 34109
Telephone: (239) 598-3222
shanlon@zelmanandhanlon.com
gcohen@zelmanandhanlon.com

**s/ *Yale T Freeman***
Yale T. Freeman, Esq
FL Bar Number: 161855
**Yale T. Freeman, PA**
999 Vanderbilt Beach Road, Suite 200
Naples, FL  34108
Telephone: (239) 530-2500
ytfreeman@ytfreemanlaw.com

*s/ Virginia E. Anello*

Virginia E. Anello, Esq.
*Pro Hac Vice Forthcoming*
Brian J. Perkins, Esq.
*Pro Hac Vice Forthcoming*
Diana Yastrovskaya, Esq.
*Pro Hac Vice Forthcoming*
**Douglas and London, P.C.**
Attorneys for Plaintiff
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501
vanello@douglasandlondon.com
bperkins@douglasandlondon.com
dyastrovskaya@douglasandlondon.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which I will send a notice of electronic filing to all counsel of record.

*s/ Sharon M Hanlon*

Sharon M Hanlon, Esq